JOHN T. GORMAN
Federal Public Defender
District of Guam

KIM SAVO
Assistant Federal Public Defender
First Hawaiian Bank Building
400 Route 8, Suite 501
Mongmong, Guam 96910
Telephone: (671) 472-7111
Facsimile: (671) 472-7120

Attorney for Defendant
NAI JOU WANG

FILED
DISTRICT COURT OF GUAM
JUL 28 2005
MARY L.M. MORAN
CLERK OF COURT



IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| UNITED STATES OF AMERICA, | ) CR 05-00032 |
|---|---|
| Plaintiff, | ) DEFENDANT'S OBJECTIONS TO THE ) PRESENTENCE REPORT AND |
| vs. | ) POSITION RE SENTENCING; EXHIBITS; ) [PROPOSED] FINDINGS |
| NAI JOU WANG, | ) |
| Defendant. | ) |

Defendant, Nai Jou Wang, by and through counsel, Kim Savo, Assistant Federal Public

Defender, respectfully requests this Court to sentence him to a time-served sentence.

## I. INTRODUCTION

Nai Jou Wang is a Taiwanese native who will be deported whenever he is released from custody. He has been in custody for 222 days.

Mr. Wang honorably served his nation as an infantry officer for nearly twenty years. His participation in this credit card fraud scheme is a once-in-a-lifetime departure from his otherwise law abiding life. Mr. Wang accrued significant debt as a result of a failed business venture. He opened an internet and computing business in 1999 but it failed in the first year. Due to his age, the only job Mr. Wang was able to find was as a part-time taxi driver. His earnings were insufficient to pay his business debt and contribute to the support and education of his children. Mr. Wang was approached by an acquaintance at a coffee shop offering him an opportunity to make quick money. Mr. Wang jumped at the chance to earn more money than he could driving the taxi.

Mr. Wang agreed to go to Guam with a man he met through that acquaintance, whom he knew only by the name "Ah Jae." Mr. Wang understood that he would purchase luxury items from stores on Guam that Ah Jae would then sell in Taiwan. Ah Jae directed Mr. Wang and the co-defendants as to what merchandise they should attempt to purchase. Mr. Wang was to receive a commission on the items that were sold.

Mr. Wang met Ah Jae at the airport, where he also first encountered the co-defendants in this case. Unlike Mr. Shih, Mr. Wang had not previously traveled to Guam for this purpose. Ah Jae provided Mr. Wang with an airline ticket. When they arrived as a group on Guam, Ah Jae provided Mr. Wang a fake passport and unauthorized credit cards in the same name.

2

Mr. Wang entered Guam using his genuine passport. He did not attempt to conceal his true identity from immigration officials.

On April 19, 2005, in the presence of counsel, Mr. Wang was interviewed by Special Agent Chiko Hoge. Although the information provided by Mr. Wang has not led to the prosecution of any other individuals, he answered all of S.A. Hoge's questions honestly and fully to the best of his knowledge. Mr. Wang did identify a passport photograph of the man he knew as Ah Jae. It is precisely because of his lack of knowledge of any larger organization or the true name and identity of Ah Jae that someone like Mr. Wang is used by organized crime to engage in these fraud schemes.

Although he is personally responsible for a portion of the overall monetary loss, it is Ah Jae who made off with the fraudulently obtained merchandise. Mr. Wang has gained nothing and lost much by his own criminal conduct.

## II. DISCUSSION

The Supreme Court has ruled that the mandatory nature of the federal sentencing guidelines runs afoul of the Sixth Amendment. *United States v. Booker*, 125 S. Ct. 738 (2005). After *Booker*, the sentencing guidelines are "effectively advisory." *Id.* at 757. Courts are now required to consider the guidelines as only one among the other statutory purposes of sentencing in arriving at the appropriate sentence.[1] *Id.* The guidelines are neither the starting point of the

---

[1] "The directives of *Booker* and § 3553(a) make clear that courts may no longer uncritically apply the guidelines and, as one court suggested, 'only depart . . . in unusual cases for clearly identified and persuasive reasons.'" *United States v. Ranum*, 353 F. Supp. 2d 984, 986 (E.D. Wis., Jan. 19, 2005), *citing United States v. Wilson*, 350 F. Supp. 2d 910, 912 (D. Utah, Jan. 13, 2005). The approach espoused in *Wilson* is inconsistent with the holdings of the merits majority in *Booker*, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in *Booker*, directing courts to consider

3

court's considerations, nor are they to be weighed more heavily than the other statutory purposes. As the Ninth Circuit has stated the advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence . . . ." *United States v. Ameline*, 400 F.3d 646, 655-56 (9th Cir. 2005), *reh'g en banc*, 409 F.3d 1073. These "statutory purposes," including the guidelines, are enumerated at 18 U.S.C. §§ 3553(a), 3582(a), and 3661.

The overriding principle and basic mandate of Section 3353(a) requires district courts to impose a sentence "sufficient but not greater than necessary" to comply with the four purposes of sentencing: retribution (to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment), deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a)(2).

In arriving at the appropriate sentence, section 3553(a) directs the court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the offender,[2]

---

all of the § 3353(a) factors, many of which the guidelines either reject or ignore. *See United States v. Issa M. Jaber*, 362 F. Supp. 2d 365, 371 (D. Mass, Mar. 16, 2005) ("*Wilson* method comes perilously close to the mandatory regime found to be constitutionally infirm in *Booker*"); *see also United States v. Myers*, 353 F. Supp. 2d 1026, 1028 (S.D. Iowa, Jan. 26, 2005) (Pratt, J.) (agreeing with *Ranum* approach and arguing that the *Wilson* approach is in error because it makes the guidelines, "in effect, still mandatory"); *United States v. West*, 2005 WL 180930 (S.D.N.Y. Jan 27, 2005) (following *Ranum*).

[2] Under the guidelines, courts are generally forbidden to consider the defendant's age, U.S.S.G. § 5H1.1, his education and vocational skills, § 5H1.2, his mental and emotional condition, § 5H1.3, his physical condition including drug or alcohol dependence, § 5H1.4, his employment record, § 5H1.5, his family ties and responsibilities, § 5H1.6, his socio-economic status, § 5H1.10, his civic and military contributions, § 5H1.11, and his lack of guidance as a youth, § 5H1.12. The guidelines' prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant. *Id.*

4

(2) the kinds of sentences available, (3) the guidelines and policy statements issued by the Sentencing Commission, (4) the need to avoid unwarranted sentencing disparity, and (5) the need to provide restitution where applicable. 18 U.S.C. § 3553(a)(1), (a)(3), (a)(5)-(7). Neither the statute nor *Booker* suggest that any single factor is to be given more weight than any other factor. There is no authority in the Ninth Circuit directing district courts to give more weight to the guidelines than to the other statutory factors.

Section 3553(a)(2)(D) requires a sentencing court to evaluate the need to provide the defendant with education, training, treatment or medical care in the most effective manner. This directive might conflict with the guidelines, which in most cases offer only prison. See U.S.S.G. § 5C1.1 (describing limited circumstances in which court can impose sentence other than imprisonment). By enacting section 3582, Congress explicitly recognized that imprisonment is "not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582 (a).

Finally, section 3661 provides that "no limitation shall be placed on the information concerning the background, character, and conduct of the person . . . which a court . . . may consider for the purpose of imposing and appropriate sentence." 18 U.S.C. § 3661. In sum, in every case, courts must now consider all of the statutory factors, not just the guidelines in arriving at the appropriate sentence.

**A.      The Sentencing Factors Weigh in Favor of a Time-Served Sentence.**

        **1.      The nature and circumstances of the offense and the history and characteristics of the offender**

5

For Mr. Wang, participating in this credit card fraud scheme constitutes aberrant behavior.[3] He committed this, his first crime, at the age of 44. After decades of national service and legitimate employment, Mr. Wang felt pressured by his debt and parental obligations to make money by unlawful means. Mr. Wang's inexperience as a criminal is evident: the first time he was challenged by a cashier regarding one of the credit cards he fled in fear, leading to his arrest. The Court should take into consideration this deviation from an otherwise law abiding life in sentencing Mr. Wang.

Mr. Wang's own conduct was by no means sophisticated. He entered Guam using his legitimate passport. He did not have the ability or the means to obtain the fake passport or the unauthorized cards. They were provided to him. Mr. Wang did not himself choose Guam to avoid detection or prosecution.

Although Mr. Wang may be equally as culpable as his co-defendants in this case, he operated at the direction of Ah Jae. If authorities had managed to capture Ah Jae, Mr. Wang would clearly be less culpable in the overall scheme as compared to this individual, who was the organizer and leader, who obtained the fake passports and unauthorized cards, picked Guam as the location, provided Mr. Wang with a list of items to obtain, took the merchandise from Mr. Wang once he obtained it, and who was ostensibly going to pay Mr. Wang a commission.

On April 19, 2005, Mr. Wang was interviewed by Special Agent Chiko Hoge regarding his involvement in this offense. Mr. Wang answered all of S.A. Hoge's questions fully and truthfully to the best of his knowledge. He identified a passport photograph of the leader and

---

[3] The "aberrant behavior" departure permitted under the mandatory guidelines regime was limited in application to individuals who committed only a single transaction. *See* U.S.S.G. § 5K2.20. The Court is no longer restricted to the precise terms of the guidelines.

6

organizer of the scheme, whom he knew only as "Ah Jae." When imposing sentence, the Court should consider Mr. Wang's efforts to provide whatever information he did have to the Secret Service

### 2. The kinds of sentences available

The Court should fashion a sentence that takes into account the total number of days that Mr. Wang has been held in custody. Mr. Wang has been in federal custody since April 1, 2005. He has been without liberty, however, since he was first arrested by Guam police on January 16, 2005. Mr. Wang was held by local authorities until such time as it was determined that federal rather than local prosecution would proceed. Thus, at the time of sentencing, he will have been in custody for a total of 222 days.

Moreover, Mr. Wang will be deported and will not be eligible for reentry to the United States as a result of sustaining these convictions.

### 3. The advisory sentencing guidelines

Mr. Wang has no prior convictions and, thus, is in Criminal History Category I. PSR at ¶ 54. Mr. Wang agrees that the three counts to which he pled guilty group. PSR at ¶ 34. Based on the grouping rules set out at U.S.S.G. § 3D1.3(a), the offense level for counts 1 and 2 controls. PSR at ¶ 48. The base offense level is <u>6</u>. PSR at ¶ 35.

Mr. Wang objects, however, to the calculation of the total offense level for counts 1 and 2 as set forth in the presentence report. PSR at ¶ 35-42.

Mr. Wang pled guilty to charges arising from his fraudulent acts in the District of Guam. The Court should not increase the offense level based on fraudulent activity that occurred internationally. Relying on information provided by the United States Secret Service, the

7

presence report calculates the total loss as $37,942.97. PSR at ¶ 36. This amount pertains exclusively to losses by use of these credit cards <u>outside of the United States</u>, and outside of the District of Guam. *See* Loss Chart, SA Chiko Hoge, June 12, 2005, attached as Exhibit A.

Mr. Wang was arrested on January 16, 2005. PSR at ¶ 8. All but three of the fraudulent international credit charges were made <u>after</u> Mr. Wang was arrested. *See* Exhibit A. Nor was Mr. Wang in possession of any of the unauthorized credit cards prior to arriving in Guam, as corroborated by Mr. Shih. *See* Investigative Report, attached as Exhibit B. Consequently, Mr. Wang should not be held accountable for any fraudulent credit card charges made prior to the time that he joined the conspiracy or after he was arrested.

Moreover, no evidence has been provided regarding actual loss for the fraudulent activity that occurred in the District of Guam. According to S.A. Hoge's investigative report, "these amounts do not include the fraudulent activity conducted in Guam." *See* Exhibit B, at 3.

Where there is no actual reported loss amount, the guidelines provide that a loss of $500 should be assessed per counterfeit access device. *See* U.S.S.G. § 2B1.1, comment. (n. 3(F)(i)). Here, there were a total of 29 unauthorized credit cards. The intended loss amount is thus $14,500. For this amount, the guidelines advise an additional 4 points for this loss amount, not 6 points.

Section 2B1.1 defines a victim as "any person who sustained any part of the actual loss determined under subsection (b)(1)." §2B1.1., comment. (n. 1). There is no evidence that there were any actual victims of the purchases made on Guam by Mr. Wang and his codefendants. Mr. Wang did, however, admit that he made purchases at Gucci and Luis Vuitton. Even assuming for argument that there were at least two victims associated with these purchases, there

8

is no evidence to support that there were more than 10 actual victims from fraudulent activity that occurred in the District of Guam. The Court should not add a two level increase for more than 10 victims.

After *Booker*, the Court has the discretion whether to apply particular special offense characteristics when computing the total offense level. Here, based on the nature and circumstances of the offense, Mr. Wang contends that the Court should not apply a two-level adjustment for sophisticated means under U.S.S.G. § 2B1.1(b)(9). PSR at ¶ 38. Mr. Wang traveled to Guam on his own, legitimate passport. Upon his arrest, he provided his true name to authorities. He did not receive the false passport and unauthorized credit cards until he arrived on Guam. Mr. Wang was a participant in a scheme created by "Ah Jae". Adding two additional points to the base offense level under these circumstances over-estimates Mr. Wang's culpability.

Mr. Wang proposes that the Court find an offense level of 10, with a 2 point reduction for acceptance of responsibility, yielding a total offense level of **8**. The advisory guideline range based on a Criminal History Category I and an offense level of 8 is 0-6 months imprisonment.

### III. CONCLUSION

Based on the foregoing, Mr. Wang respectfully requests that the Court sentence him to a period of time-served.

DATED: Mongmong, Guam, July 28, 2005.

_____
KIM SAVO
Attorney for Nai Jou Wang

**SHIH, Ming Jui et al**
Case # 435-769-46-S
SA Chiko Hoge
06/12/05

| | Last | First | Type | Issuing Bank | Number | Loss | Used in | Dates | Bank | Victim | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | WU | PEI HSUN | MC | ABN AMRO BANK | | $4,025.34 | | | | | |
| 2 | TONG | BENJAMIN | MC | | | $3,104.44 | Taiwan | 1/17/2005 | Credit Suisse | Marc Stump | Switzerland |
| 3 | CHEN | ZHIQIANG | MC | | | | Taiwan | 3/29-4/11/05 | | Maria A. Motaza | Switzerland |
| 4 | TONG | BENJAMIN | MC | BANK MASHILL | | $2,294.96 | Taiwan | 1/19/2005 | | Roger Lundstrom | |
| 5 | | | MC | AM. MUSEUM OF NATURAL HIST. | | not recovered | | | | | |
| 6 | WU | PEI HSUN | VISA | BANK OF CHINA | | $0.00 | N/A | N/A | | | |
| 7 | CHEN | ZHIQIANG | VISA | ABN-AMRO BANK | | | | | | | |
| 8 | WU | PEI HSUN | VISA | ABN-AMRO BANK | | | | | | | |
| 9 | CHEN | ZHIQIANG | VISA | AIG | | | | | | | |
| 10 | TONG | BENJAMIN | VISA | AIG | | $0.00 | N/A | N/A | CIC | Mauricette Masset | France |
| 11 | WU | PEI HSUN | VISA | AIG | | $965.24 | TWN/Jakarta | 1/17/2005 | Societe Generale | Christian Pichon | |
| 12 | WU | PEI HSUN | VISA | AIG | | | | | | | |
| 13 | CHEN | ZHIQIANG | VISA | BANK OF CHINA | | $0.00 | N/A | | BNP Paribas | Francois Chauzy | France |
| 14 | CHEN | ZHIQIANG | VISA | BANK OF CHINA | | | | | | | |
| 15 | TONG | BENJAMIN | VISA | BANK OF CHINA | | | | | | | |
| 16 | TONG | BENJAMIN | VISA | BANK OF CHINA | | | Taiwan | 1/17/2005 | BNP Paribas | Dharmayhanti Jeudi | France |
| 17 | WU | PEI HSUN | VISA | BANK OF CHINA | | | | | | | |
| 18 | CHEN | ZHIQIANG | VISA | CITIBANK | | | | | | | |
| 19 | CHEN | ZHIQIANG | VISA | CITIBANK | | | | | | | |
| 20 | WU | PEI HSUN | VISA | CITIBANK | | | | | | | |
| 21 | WU | PEI HSUN | VISA | CITIBANK | | | | | | | |
| 22 | CHEN | ZHIQIANG | VISA | HSBC | | | | | | | |
| 23 | CHEN | ZHIQIANG | VISA | HSBC | | $8,390.71 | Taiwan | 1/17-1/20/05 | Doral Bank | Mario Torrer | PR |
| 24 | TONG | BENJAMIN | VISA | HSBC | | $1,038.70 | GB | 12/23/2004 | Doral Bank | Pedro Santiago | PR |
| 25 | WU | PEI HSUN | VISA | HSBC | | $0.00 | N/A | N/A | | Ian Persson | Sweden |
| 26 | WU | PEI HSUN | VISA | HSBC | | $132.15 | Korea | 1/5/2005 | | | |
| 27 | CHEN | ZHIQIANG | VISA | STANDARD AND CHARTERED | | | | | | | |
| 28 | CHEN | ZHIQIANG | VISA | STANDARD AND CHARTERED | | | | | | | |
| 29 | TONG | BENJAMIN | VISA | STANDARD AND CHARTERED | | $332.31 | Korea | 1/8-1/10/05 | | Peinilla Lindberg | Sweden |
| 30 | TONG | BENJAMIN | VISA | | | not recovered | | | | | |
| 31 | TONG | BENJAMIN | VISA | | | not recovered | | | | | |

NOTE: The figures in bold are estimates, as they were converted to USD from foreign currencies.

DEFENDANT'S EXHIBIT A

U.S. SECRET SERVICE INVESTIGATIVE REPORT

FROM: GUAM RESIDENT OFFICE  FILE: 435-769-46-S
TO: CRIMINAL INVESTIGATIVE DIVISION  X-REF: N/A
INFO: ISD  SEIZURE#: N/A
HONOLULU FIELD OFFICE
HONG KONG RESIDENT OFFICE

SUBJECT: REPORT OF CONTINUING INVESTIGATION

ACTUAL LOSS: $ 17,659.12     POTENTIAL LOSS: $ 37,942.97

CASE TITLE: MING JUI SHIH ET AL
CASE TYPE: 769.110 - Counterfeit Bank Issued Credit Cards
SECONDARY CASE TYPE: 725.510, 771.100, 867.010, 848.240, 848.290, 848.910, 848.960
CONTROLLING OFFICE: GUAM FIELD OFFICE
REPORT MADE BY: SA CHIKO HOGE (808) 541-1912
DATE CASE OPENED: 02/02/05
PREVIOUS REPORT: NOTIFICATION OF FEDERAL ARREST DATED 04/07/05
REPORTING PERIOD: 4/9/05-7/9/05
STATUS: CONTINUED

SYNOPSIS:

All defendants in this case have pleaded guilty. Defendant Nai-Jou Wang will be sentenced on August 10, 2005. Defendants Ming Jui Shih and Chun-Han Lee will be sentenced on August 30, 2005.

Agents will attempt to interview Cb.ung Kai Wang, as to his knowledge and involvement in this case.

Case continued pending further investigation and final judicial action of all defendants.

DETAILS OF INVESTIGATION:
Reference is made to all previous reports in this case.

On April 13, 2005, SA Hoge interviewed Ming Jui Shih, with Shih's attorney Mark Smith (671/477-6631) and translator Mee Chun, at the Federal Detention Center, Hagatna, Guam. During this interview, Shih stated that he traveled to Guam with Wang, Lee and "Ah Jae" (later identified as Hui Fu Huang and hereinafter referred to as Huang) for the purpose of buying merchandise with CFT credit cards.

Shih said that Huang organized and paid for their trip to Guam. When they arrived in Guam, Huang



provided them all with the CFT credit cards and CFT passports and instructed them on what items to purchase. Shih said that all of the fraudulently purchased merchandise was to be turned over to Huang, who was planning on taking it back to Taiwan for resale. Shih said that he would later be paid a commission for his fraudulent purchases.

On April 19, 2005, SA Hoge interviewed Wang, with Federal Public Defender Kim Savo (671/472-7437), Federal Public Defender's Office Investigator Alex Modaber, and translator Mee Chun, at the Guam Resident Office. During this interview, Wang stated \\Ah Jae" (Huang) was the source of the CFT credit cards and CFT passports. Wang said that Huang organized their trip to Guam, provided the airline tickets and instructed them on what merchandise they were to purchase with the CFT credit cards.

Wang admitted to fraudulently purchasing merchandise at Gucci and Luis Vuitton while in Guam. Wang said their intent was to take the merchandise they acquired in Guam back to Taiwan for resale, at which time Huang would pay him a commission.

Subsequent checks conducted by ICE SA Timothy Conway (671/472-7522) confirmed that on January 15, 2005, Hui Fu Huang traveled to Guam with Shih, Wang and Lee. In addition, in December 2003, Shih traveled to Guam with Hui Fu Huang and Chao Ming Sung.

From previous checks, SA Hoge recalled that on January 16, 2005, Hui Fu Huang registered at the Marriott Hotel Room #809. When SA Hoge met with Charles Stark, Guam Marriott Resort and Spa, Director of Loss Prevention (671/649-7827), she was informed that according to hotel records, on January 16, 2005, Chun-Han Lee and Hui Fu Huang checked into rooms #808 and #809 respectively, utilizing prepaid vouchers. Each of these rooms were for two (2) adults and the same Visa credit card (Acct. No. 4563 0185 0752 6062) was utilized for incidental charges on the rooms. The only recorded identification was for Huang in Room #809, who presented a Taiwan passport No. 210380698. The hotel only recorded this number and did not make a physical copy of the passport. Records further show that the rooms were paid by voucher from "KAI", telephone number 482-5328.

This name and number was also found handwritten in Shih's notebook. When asked about this, Shih told SA Hoge that "Kai" was a tour guide he met at the Guam International Airport and that he was not involved in the CFT credit cards.

On April 21, 2005, SA Hoge was assisted by ICE SA Conway, who issued a Federal Administrative Subpoena to the Guam Telephone Authority (GTA) for subscriber information related to telephone number 482-5328.

Furthermore, SA Hoge was informed by ICE SA Conway that a copy of Hui Fu Huang's Taiwan passport No. 210380698 was on file, from previous checks conducted with Saipan Customs. According to SA Conway, Saipan Customs and Immigration procedurally scans the first page of all visitors' passports. Upon reviewing the copy of Huang's passport, SA Hoge identified it as the same photograph as in the seized CFT passport for Hongzhi Li. During their interviews, Shih and Wang both identified the photograph from Hongzhi Li's passport as "Ah Jae", the source of the CFT credit cards.

On April 28, 2005, SA Hoge was informed by ICE SA Conway that the telephone number 482-5328 was registered to Chung Kai Wang, SSN: 58694-8734, address: 134 Ifil Court, Liguan Terrace, Dededo, Guam, Phone: 632-5629. Subsequent Guam Driver's license checks indicated that Wang was employed by Dragon Phoenix Travel (671/649-6220). Attempts will be made to locate and interview Wang to determine his relationship with the defendants and/or knowledge of the credit card fraud.

Checks conducted with the National Police Agency, Criminal Investigation Bureau (CIB) shows that Huang was arrested on November 22, 2203, for Taiwanese Forgery charges and was sentenced to six (6) months in prison. Huang was also arrested in 1998 for Gambling and in 1996 for Theft. The CIB currently has an on-going Bank Fraud investigation involving a number of individuals, including Huang.

SA Hoge was subsequently informed by Alan Choi, Asia/Pacific Security & Risk Services, MasterCard International (852-2588-8326), that the MasterCard account numbers compromised in this case had a total current fraud loss of approximately $9,424.74. In addition, Toshinori Takahasi, Manager AP Risk management, Visa International Tokyo Office (81-3-3210-1728) reported a total current Visa fraud loss of approximately $10,859.11. These amounts may not reflect the total dollar loss, as not all issuing banks have responded to MasterCard or Visa. In addition, these amounts do not include the fraudulent activity conducted in Guam. SA Hoge has made additional inquiries with both MasterCard and Visa for any updated fraud loss information.

JUDICIAL ACTION:

All defendants in this case have pleaded guilty. Defendant Nai-Jou Wang will be sentenced on August 10, 2005. Defendants Ming Jui Shih and Chun-Han Lee will be sentenced on August 30, 2005.

SUSPECTS/DEFENDANTS:

SHIH, Ming Jui - DEFENDANT - ARRESTED (FEDERAL)
    1599: Yes
    1599A: Yes

WANG, Nai-Jou - DEFENDANT - ARRESTED (FEDERAL)
    1599: Yes
    1599A: Yes

LEE, Chun-Han - DEFENDANT - ARRESTED (FEDERAL)
    1599: Yes
    1599A: Yes

LNU, FNU (AKA: Tsai) - ELIMINATED A;S SUSPECT
    1599: Yes
    1599A: No

## [PROPOSED] FINDINGS

1. The instant offense is defendant Nai Jou Wang's first crime, which he did not commit until he was 44 years old;

2. Defendant Wang did not himself use any sophisticated means to commit this crime. Defendant Wang entered the United States on his own, legitimate passport. He engaged in illegal activities at someone else's direction;

3. Defendant Wang cooperated with the United States Secret Service fully and honestly to the best of his knowledge about the scheme;

4. Defendant Wang will be deported when he is released from custody;

5. The total offense level is 8 with a Criminal History Category of I, yielding an advisory guideline range of 0-6 months.

DATED: Hagatna, Guam, August __, 2005.

                                                    _____
Hon. Consuelo B. Marshall
United States Chief District Judge
Central District of California
by designation
District of Guam

10

Case 1:05-cr-00032   Document 33   Filed 07/28/2005   Page 14 of 15

## CERTIFICATE OF SERVICE

I, ALEXANDER A. MODABER, hereby certify that a true and exact copy of the foregoing document was duly mailed and/or hand-delivered to the following on July 28, 2005:

RUSSELL C. STODDARD
First Assistant United States Attorney
Sirena Plaza
108 Hernan Cortez, Ste. 500
Hagatna, Guam 96910

Attorney for Plaintiff
UNITED STATES OF AMERICA


STEPHEN GUILLIOT
U.S. Probation Officer
Districts of Guam and NMI
2nd Floor, U.S. District Court

DATED: Mongmong, Guam, July 28, 2005.

ALEXANDER A. MODABER
Investigator